[Civ. No. 1580. First Appellate District.—December 1, 1915.]

WILLIAM GLINDEMANN, Respondent, v. WILLIAM EHRENPFORT, Appellant.

FRAUD—SALE OF CORPORATE STOCK—DAMAGES—UNWARRANTED JUDG-
MENT.—In an action to recover damages alleged to have been suf-
fered by reason of certain false and fraudulent representations con-
cerning the value of certain shares of corporate stock, and the in-
terest or dividends that such stock paid, whereby the plaintiff was
induced to purchase the same from the defendant, a judgment in
favor of the plaintiff, who resold the stock the day following its
purchase, cannot be sustained, where the amount of the same is based
upon the difference between the value that the plaintiff and his
purchaser determined the stock to be worth under a compromise
agreement made between them six years after the occurrence of

the transaction, and the price paid to plaintiff by such purchaser for the stock.

ID.—MEASURE OF DAMAGES.—In such an action the measure of damages is the difference between the value of the stock at the time of its sale by the defendant to the plaintiff and what it was then actually worth.

ID.—EVIDENCE—VALUE OF STOCK—DIVIDENDS.—While the payment of dividends and the amount thereof are elements affecting the value of corporate stock, it by no means follows that such stock has no value because of the failure to pay dividends thereon.

ID.—PLEADING—DISCOVERY OF FRAUD—INSUFFICIENT COMPLAINT—STATUTE OF LIMITATIONS.—A complaint in an action for damages for fraud in the procurement of a sale of corporate stock, filed six years and four months after the alleged fraud, which contains no facts showing why the same was not sooner discovered, but which simply recites that the fraud was not known or discovered until about a certain date, is insufficient.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. Adolphus E. Graupner, Judge.

The facts are stated in the opinion of the court.

Liess & Sweasey, for Appellant.

James M. Hanley, for Respondent.

LENNON, P. J.—This action was brought to recover damages alleged to have been suffered by plaintiff, William Glindemann, by reason of certain alleged false and fraudulent representations made by defendant concerning the value of certain shares of corporate stock, and the interest or dividends that such stock paid, whereby plaintiff was induced to purchase said stock from the defendant. The case was tried with a jury, which rendered a verdict in favor of the plaintiff for the sum of $420, and this appeal is from the judgment rendered thereon and from the order denying the defendant a new trial.

It is insisted by the appellant that there is no evidence upon which the verdict and judgment can be sustained.

The facts leading up to the transaction, briefly stated, are these: In February, 1906, the defendant purchased ten shares of the capital stock of the Central Trust Company for the sum

of one thousand one hundred dollars. One month thereafter he received a semi-annual dividend of twenty-five dollars from profits earned by the stock prior to his purchase, the rate of dividend being approximately five per cent per annum. Shortly thereafter the fire of 1906 occurred in the city and county of San Francisco, causing a suspension of the dividends upon the stock. On January 3, 1907, ten months after defendant had received the dividends referred to, he sold said ten shares of stock to the plaintiff herein for the sum of one thousand one hundred dollars, said sum being the exact amount that defendant had paid for the stock eleven months previously. The following day plaintiff resold the stock to his sister-in-law, a Mrs. Schweitzer. No dividends were declared on said stock during the succeeding years of 1907 or 1908, or until July 1, 1909, when a dividend of three dollars per share was paid, followed semi-annually by similar dividends up to the time of the trial in March, 1914. In February, 1911, at a point of time four years and over subsequent to the date of the sale and transfer of the stock to Mrs. Schweitzer, the Central Trust Company and the Anglo-California Trust Company became merged. At the time of the merger Mrs. Schweitzer delivered up her shares, and received in exchange therefor six shares of Anglo-California Trust Company stock, and the sum of $80, which sum was the equivalent of a fractional two-thirds share of said stock. On February 1, 1913, six years after the sale of the stock to the plaintiff, he was informed that his sister-in-law, Mrs. Schweitzer, felt bitter toward him on account of his having sold her the stock, and upon interviewing her upon the subject she informed him that she had not received any dividends on the stock until July, 1909, and also that he had misrepresented the value of the stock to her, and that it was not worth the sum of $110 per share at the time of her purchase. Thereafter plaintiff claims he paid to Mrs. Schweitzer the sum of $420. This sum, it appears, was the difference between eight hundred dollars, which was the value that the plaintiff and Mrs. Schweitzer determined the stock to be worth, and the sum of one thousand one hundred dollars, the price paid to plaintiff by Mrs. Schweitzer for the stock; and it seems this sum was sufficient to include interest from the date of the investment. On May 16, 1913, six years and four months after the sale by defendant to the plaintiff of the stock, and four years

subsequent to the resumption of the payment of regular dividends thereon, plaintiff filed his complaint herein alleging fraud in the procurement of the sale. Plaintiff alleged in his complaint as a basis for his cause of action that at the time of the sale by defendant to plaintiff, the defendant represented to him that said stock was worth the sum of one thousand one hundred dollars, being $110 per share, and was bearing interest at the rate of six per cent per annum. The evidence in support of this allegation shows that defendant informed plaintiff that he had *paid* the sum of $110 per share for the stock. With reference to the alleged representations of defendant concerning the interest, the evidence is not clear upon the point as to whether or not the defendant represented that the stock was paying five or six per cent at the time of its transfer from the defendant to plaintiff. However that may be, the judgment cannot stand for the reason that there is absolutely no evidence in the record of the value of the stock either at the time of its transfer from the defendant, or at the time of its transfer from the plaintiff to Mrs. Schweitzer. The only evidence relating in any way to that phase of the case consisted of the testimony of Mr. Ouer, a witness for the plaintiff, who is the cashier of the Anglo-California Trust Company, and who was the assistant cashier of the Central Trust Company during the years 1906 and 1907. His testimony was to the effect that the nonpayment of dividends would not necessarily indicate a decrease in the actual value of the stock, and that the stock would really be worth more by the nonpayment of dividends, providing the company was doing a profitable business. He also testified that the stock was not a listed one; that he could not give its actual value in January, 1907, and that its value depended entirely upon supply and demand. From this testimony counsel for plaintiff argues that it follows that the stock was worthless at the date of both sales, and only became valuable at the time of the merger of the Central and Anglo-California Trust Companies, four years thereafter, at which time the damages became crystallized and fixed, and that therefore the date of the merger is the only date possible at which damages could be assessed in view of the plaintiff's alleged excusable delay in the discovery of the alleged fraud.

While the payment of dividends and the amount thereof are elements affecting the value of corporate stock, it by no

means follows that such stock has no value because of the failure to pay dividends thereon. (*Wegerer* v. *Jordan,* 10 Cal. App. 362, 365, [101 Pac. 1066].) In cases of this character the measure of damages is the difference between the value of the stock at the time of the transaction if the alleged representations had been true, and what it was then actually worth. However, the amount of the verdict was undoubtedly based upon the compromise agreement made between plaintiff and his sister-in-law six years after the transaction took place; and that this is so is evident from the fact that the verdict is for the exact amount claimed to have been paid to her by the plaintiff. Conceding that this sum represented the difference in value of the stock between the time of sale and the date when the merger of the companies took place, it by no means affords a criterion of the value of the stock at the time of the sale. We conclude, therefore, that there being no evidence of the value of the stock at the time of the transfer, there is absolutely no basis upon which a verdict could be predicated.

Defendant also invokes the statute of limitations as a shield to the action. As before stated, the complaint was filed six years and four months after the alleged fraud. No facts are pleaded showing why the alleged fraud was not sooner discovered. The complaint contains the mere statement that the fraud was not known or discovered by the plaintiff until about the first day of February, 1913. Such an allegation is insufficient to excuse the delay in bringing the action. (*People* v. *San Joaquin Valley etc. Assn.,* 151 Cal. 797, [91 Pac. 740]; *Truett* v. *Onderdonk,* 120 Cal. 581, 589, [53 Pac. 26].)

The judgment and order denying a new trial are reversed.

Richards, J., and Kerrigan, J., concurred.