[S. F. No. 587. In Bank.—April 9, 1898.]

# MIERS F. TRUETT, Appellant, v. ANDREW ONDERDONK, Respondent.

Partnership Accounting—Settlement—Stipulation to Dismiss Action—Fraud—Jurisdiction.—Where an action was brought for a partnership accounting, and a settlement was had, and a stipulation filed for the dismissal of the action, but no judgment, of dismissal was in fact entered, the action is still pending notwithstanding the lapse of many years; and the court has not lost jurisdiction to relieve the plaintiff from the effect of the stipulation on account of alleged fraud, and to cause the case to be set for trial if the circumstances shown should justify it.

Id.—Insufficient Showing of Fraud—Presumption—Lack of Diligence—Dismissal without Prejudice.—Where the relief from said stipulation for dismissal was not sought until more than fourteen years had elapsed after the stipulation was filed, and the affidavits presented do not necessarily tend to overcome the presumption against fraud, but do disclose a lack of diligence in the plaintiff in moving for relief in the premises, the relief sought is properly denied; and the entry of the judgment of dismissal without prejudice to another action, affords to the plaintiff all the relief he could reasonably ask.

Id.—Stale Claim—Excuse for Delay—Presumption of Knowledge.—Equity abhors a stale claim, and it was incumbent upon plaintiff to show facts excusing his long delay in asserting the fraud, and to show not merely that the discovery was not sooner made, but that it could not have been sooner made by the exercise of reasonable diligence; and all that reasonable diligence would have disclosed, plaintiff is presumed to have known, means of knowledge in such case being the equivalent of the knowledge which it would have produced.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing to set the cause for trial and directing the entry of judgment. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

J. M. Osmont, and Boyd & Fifield, for Appellant.

Fox, Kellogg & Gray, and M. B. Kellogg, for Respondent.

VAN FLEET, J.—This action was commenced on March 18, 1880, in the superior court of the city and county of San Francisco, to secure an accounting and winding up of the affairs of a

partnership alleged to exist between the parties as contractors for the construction of seawalls, grading of railroads, filling in, extension, and widening of streets, and works of a similar character—the complaint specifying in detail a large number of contracts for work of the character indicated as being in a state of completion or partial completion by said partnership, and alleging that a large sum of money was due plaintiff from defendant on account of such work. It was alleged that defendant had assumed and taken control of the work of said partnership, and all of the affairs thereof to the exclusion of plaintiff, refused him access to or an examination of the books of the concern, or to further recognize him as a partner in the business, and, generally, as "wrongfully carrying on the said business without any regard to the rights of this plaintiff."

Summons was issued and served on the day the complaint was filed. Within a few days thereafter the parties came together and entered into a written agreement for the settlement and adjustment of their difficulties, whereby it was mutually stipulated that to avoid litigation and publicity in regard to their differences the same should be submitted to one Thomas W. Scott, as arbitrator, with full power to arbitrate and finally adjust all claims, demands, and matters of controversy of every nature existing between them; that said Scott should make his award within two days thereafter, and that the defendant Onderdonk should pay the amount of the award within twenty-four hours after notice thereof, and that thereupon this action should be dismissed.

Scott accordingly proceeded and made his award as such arbitrator, finding that there was due the plaintiff the sum of thirty-two thousand dollars. This amount was at once paid by Onderdonk, and Truett thereupon executed to him a full and complete release of all matters of difference between them, and thereafter on March 26, 1880, caused to be filed in the action by his attorney a direction that the action be dismissed.

No judgment of dismissal, however, was entered upon said direction, and there the case slumbered until November, 1894—a period of more than fourteen years. In the latter month the plaintiff appeared in said court through other counsel, and gave notice of a motion to have the cause set for trial, and to have a

day fixed for the trial thereof. In support of this motion he filed the affidavits of himself, said Scott, and one Martin. In the first, after stating the general nature and purpose of the action as alleged in the complaint, and that since said settlement Onderdonk had been continuously, with the exception of a few days, absent from and a nonresident of this state, these facts are set forth: That plaintiff was induced to enter into said settlement, and to authorize the dismissal of said action by "a material suppression and misrepresentation of facts by the defendant," "by means of which plaintiff was greatly prejudiced by his consent to said dismissal, if the same shall be effective to dismiss the action." "That, among other suppressions and misrepresentations, the defendant caused to be represented to plaintiff that a contract regarding the construction of a section of the Canadian Pacific Railway, in which plaintiff and defendant were mutually interested, and which had been obtained by defendant for the benefit of said firm, had been sold a short time prior to that, and for which nothing whatever had been realized for the benefit of said firm, the only consideration being that defendant was to receive a monthly salary as superintendent; that affiant, believing said representation to be true, made said settlement, and his attorney filed said paper authorizing dismissal accordingly; that within a few weeks last past the plaintiff has learned that said representation regarding said Canadian Pacific Railway contract was totally false; that the defendant had not disposed of the same for the consideration above named, as represented to plaintiff, but still retained an interest in said contract, out of which he subsequently realized a very large sum of money, amounting to several hundred thousands of dollars; that if plaintiff had known the facts regarding said contract, and that the same had not been disposed of as stated by defendant, plaintiff would never have consented to any settlement or dismissal of said action; that no part of said profits of said Canadian contract have ever been paid over to plaintiff, and upon a just and fair accounting defendant would be indebted to plaintiff, as plaintiff is informed and believes, in a very large sum of money."

Touching the manner and circumstances of his discovery of the defendant's alleged fraud, the affidavit states:

"In the spring of 1894 there was published in the daily papers

of San Francisco an account of one Shirley Onderdonk, a son of
the millionaire contractor, Andrew Onderdonk, of Chicago, the
defendant herein, which article fell under my eye and was read
by me. The perusal of this article set me to cogitating and to
conjecturing how said Andrew Onderdonk had become a million-
aire. Shortly after this I met a man whom I had casually
known and who had previously applied to me for a clerical posi-
tion on the railroad which I was then engaged in building from
Manzanilla to Colima in Mexico. This man knew that Onder-
donk and myself had been engaged together in building the sea-
wall in San Francisco, and spoke to me of the article or articles
published about Onderdonk's son. We discussed this matter
and conversed about Onderdonk, and he then informed me that
he had been engaged in some clerical capacity—bookkeeper, as
I now remember—on the Canadian Pacific Railroad, at a place
called Lyttons, as I now remember. I do not remember whether
his employment was with Onderdonk himself or with some of
the subcontractors on the work; at any rate, he was engaged
upon the work. In this conversation this gentleman informed
me that Onderdonk was very wealthy and had made hundreds of
thousands of dollars on the Canadian Pacific Railroad contract,
that is, the contract obtained by said Onderdonk for the benefit
of the firm of which I was a partner with said Onderdonk, re-
ferred to in my said affidavit. I have not seen my said informant
since the aforesaid conversation, and I cannot at this moment re-
call his name. He knew me better than I knew him, and, al-
though I well remembered him at the time of our conversation,
I was unable then, and am now, to recall his name. Reflecting
upon what I had learned from this man, and believing that he
was in a position to know something as to what Onderdonk had
realized out of said contract, I began to make inquiries of differ-
ent parties, but gained little information. Finally, it occurred
to me to call on O. B. Martin of San Francisco, who, as I recol-
lected, had also been employed on the Canadian Pacific Railway,
and from him I learned that the said Andrew Onderdonk had an
interest in the profits of the contract, namely the contract for the
benefit of said firm as aforesaid, besides a salary of one thousand
dollars a month. Pushing my inquiries further, Mr. Martin, at
my solicitation, went to see a Mr. McLaren, who was likewise

employed on the work, and Mr. J. McMullen, a subcontractor on said work, both of whom informed Mr. Martin, as he stated to me, that Andrew Onderdonk had an interest in the profits over and above the salary paid him. This information was obtained by me from Mr. Martin, and through him from Mr. McLaren and Mr. McMullen, the latter part of October, 1894. . . . . The amount of the profits realized by said Onderdonk out of said contract, according to my information obtained as aforesaid, was several hundred thousands of dollars, exceeding, I believe, half a million of dollars. The information so obtained as aforesaid was definite and positive, and I verily believe the same to be true."

The affidavit further stated the fact that no judgment of dismissal had ever been entered in the action, and that upon discovery of the said fraud plaintiff had retracted and withdrawn his consent to the dismissal of said action; and the affidavit closes with the prayer that an order be entered authorizing the withdrawal and retraction of said dismissal.

The affidavit of Scott states that after the commencement of the action he undertook the settlement and adjustment of the controversy between the plaintiff and Onderdonk; that in the performance of said undertaking affiant had a number of interviews "with said defendant or his agent, and negotiated with him on behalf of said plaintiff for an adjustment of their accounts and a settlement of their differences involved in said action; that in said negotiation said defendant gave affiant the items constituting the assets and liabilities of said partnership between plaintiff and defendant for the purpose of forming the basis of settlement between them; that in discussing the terms of such settlement, and arriving at a conclusion, and in making of such settlement, the defendant, Andrew Onderdonk, stated and declared to affiant that he and plaintiff had obtained a contract to build a section of the Canadian Pacific Railway, but that it became necessary to relinquish the same to other parties, inasmuch as defendant could not otherwise procure the necessary financial assistance to carry out said contract"; that Onderdonk further represented to affiant that he had retained no interest in said contract, and that the only benefit he would receive therefrom was a salary which he was to get as engineer in the construction

of said section of railway, and that beyond such salary he had no interest growing out of said contract; and it is also stated that in making the settlement said Canadian Pacific Railway contract was not taken into consideration as an asset of said partnership, by reason of the facts represented by defendant as aforesaid.

The affidavit of Martin is simply to the effect that affiant had heard read the affidavit of plaintiff Truett, and "that in so far as the same refers to him (affiant) and to things and matters, learned through this affiant, the same is true."

With these affidavits plaintiff also filed a paper formally withdrawing and retracting his order for dismissal filed March 26, 1880.

At the hearing of plaintiff's motion in February, 1895, counsel specially appeared for the defendant for the purpose of opposing the same, and to urge a counter-motion on behalf of defendant that a judgment of dismissal be entered as directed by plaintiff in his authorization filed March 26, 1880. The motions were heard together, and the facts shown on the hearing were as above stated. Thereafter, on February 27, 1895, the court made an order denying plaintiff's motion and granting that of defendant; and judgment was thereupon entered dismissing the action. Plaintiff appeals from said order and from the judgment.

Certain objections are urged by respondent which would preclude an inquiry into the merits of the real question presented by the appeal, but we deem them untenable. The motion, although technically to set the case for trial, fairly involved the further relief asked by plaintiff's affidavit, that he be relieved from the obligation of his consent to a dismissal. Nor had the court lost jurisdiction to entertain the motion. The action was still pending; it had not been dismissed, for the reason that no judgment of dismissal had been entered as required by the statute. (*Acock v. Halsey,* 90 Cal. 215; *Brady v. Times-Mirror Co.,* 106 Cal. 56.) Nor can there be any question of the power of the court, if the circumstances justified it, to relieve plaintiff from the obligation of his order of dismissal. It was in its nature but a stipulation, and it is always competent for the court to control such conventions in the interest of justice where for any reason they have been improvidently entered into. (*Robinson v. Exempt Fire Co.,* 103 Cal. 1; 42 Am. St. Rep. 93.)

The material question presented, however, is whether upon the showing made, assuming all the material statements of fact to be true, it was the duty of the court to grant plaintiff's motion, and its refusal to do so an abuse of discretion. The purpose to be subserved by the motion may be regarded as analogous in a sense to that of an action to reopen an account upon the ground of fraud, or to rescind a contract upon that ground; and assuming, for the purpose of coming to the merits, that such a question may be presented by mere motion and upon affidavits, the facts relied on should obviously be at least such as if proved in such a case would *prima facie* entitle a plaintiff to relief. We are satisfied that the facts here relied on do not meet that requirement.

In the first place, it may be seriously questioned if the facts tend sufficiently to establish any fraudulent act on the part of the defendant. There are some general statements in the affidavits of plaintiff, which, standing alone, would have that tendency, but it appears that those statements are not made from any positive knowledge, but from information derived from others; and, when the source of such information is given, it is seen to rest solely upon some vague, general, secondhand statements of third parties, one of whom plaintiff cannot name, and two of whom he did not himself see; and with no attempt made to state the source or character of the knowledge upon which his informants based their alleged statements of facts. For all that appears the entire fabric of plaintiff's information may consist of the idlest and most unfounded rumors. The affidavit of Martin does not state that he knows anything of the facts. All that his affidavit may be taken to substantiate is that he told plaintiff certain things himself, and interviewed McLaren and McMullen on the subject, who made certain statements to the affiant; but as to the truth or authenticity of his own statements, or those of McLaren and McMullen, he does not pretend to state. The affidavit of Scott states the only tangible fact in the whole showing—that defendant did represent that the Canadian Railroad contract had been disposed of without profit to the partnership. But there is nothing which competently negatives the truth of this statement or which necessarily shows that, if defendant did thereafter in fact make

money out of that contract, it was not under some subsequent arrangement, and in a manner entirely in consonance with the truth of his representations. We do not think that the court was bound to base a finding of fraud for any purpose or to any extent upon such evidence. The presumption is always against fraud, a presumption approximating in strength to that of innocence of crime, and it should not be deemed overcome, even *prima facie*, upon a showing so intangible and shadowy. (*Heller v. Dyerville Mfg. Co.*, 116 Cal. 127; *Ex parte Fkumoto*, Cal., March 18, 1893.)

But, in the next place, assuming that the evidence was sufficient to make a *prima facie* case of fraud, there is an absolute want of any showing of diligence in the plaintiff in moving for relief in the premises. Plaintiff was aware, at the time of the settlement, of the existence of the railroad contract, and that it had been taken in behalf of the firm; he so states in his affidavit. The parties in that settlement were dealing at arm's length—in the face of litigation—and yet the plaintiff took no measures whatsoever to verify the statements of defendant as to the actual facts with reference to this contract. He rested supinely and in blind confidence, so far as appears, upon those representations, notwithstanding the conduct of the defendant had been such, as alleged in the complaint, to arouse his just suspicions and put him upon inquiry as to the defendant's good faith. There is nothing shown to indicate that defendant in any way prevented an independent inquiry by plaintiff into the facts as to the status of that contract. It is to be presumed plaintiff knew because he does not negative such presumption, the source or channel through which the contract had been secured, and there is nothing to show that the slightest inquiry at that source would not have disclosed whether defendant's representations were true or false. It does not even appear that plaintiff examined the books of the partnership to ascertain what there appeared as to this contract; they might have shown the truth or falsity of defendant's claim. It is not alleged that he was denied access to the books in the making of the settlement; and yet there is nothing to show what appeared therefrom. There is no claim that they had been in any way falsified or tampered with for the purpose of covering up the true status as to this contract.

Notwithstanding these facts, neither then, nor for more than fourteen years thereafter, did plaintiff make the slightest effort to probe the truth of defendant's representations, and there is not the faintest effort to show why he did not. It was certainly not by reason of the confidence reposed, or which he had a right to repose, in the defendant; that, as we have suggested, is negatived by the averments in his sworn complaint. This lack of diligence is as fatal to the relief here sought as it would be in a direct action to recover for the fraud. Equity abhors a stale claim, and it was incumbent upon plaintiff to show facts excusing his long delay in asserting the fraud. It is not enough to assert merely that the discovery was not sooner made; it must appear that it could not have been made by the exercise of reasonable diligence. And all that reasonable diligence would have disclosed, plaintiff is presumed to have known; means of knowledge in such a case being the equivalent of the knowledge which it would have produced. (*Wood v. Carpenter,* 101 U. S. 135; *Teall v. Slaven,* 40 Fed. Rep. 774.)

Under the circumstances, we think the court below was fully justified in denying plaintiff the relief sought, and that plaintiff got all he could reasonably ask in having the judgment entered without prejudice to another action.

The order and judgment are affirmed.

Harrison, J., Garoutte, J., McFarland, J., and Henshaw, J., concurred.

Rehearing denied.