No. 82-257

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

JOHN R. MOBLEY, DELORES W. MOBLEY,
and MOBLEY LAND, INC., a corporation,

Plaintiff and Appellant,

vs.

NEWMAN R. HALL, MARJORIE A. HALL,
EASTERN BROKERAGE SERVICE, AL "BUCK"
MURI and ED KIMBALL,

Defendants and Respondents.

---

Appeal from:   District Court of the Sixteenth Judicial District,
               In and for the County of Custer
               Honorable A. B. Martin, Judge presiding.

Counsel of Record:

    For Appellant:

        Gene Huntley, Baker, Montana

    For Respondents:

        Lucas and Monaghan, Miles City, Montana
        Thomas Monaghan, Miles City, Montana

---

Submitted on briefs: November 5, 1982

Decided: January 20, 1983

Filed: JAN 20 1983

Ethel M. Harrison

Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

This is an appeal from an order of the District Court of the Sixteenth Judicial District, Custer County, granting defendants' motion for summary judgment on the ground that plaintiffs' claim was barred by the statute of limitations. We affirm the order of the District Court and remand the case for further consideration.

On November 3, 1975, defendants, Newman and Marjorie Hall, entered into a listing agreement with defendants Eastern Brokerage Service (Eastern) and Ed Kimball, Eastern's agent. The Halls told Kimball that the cattle ranch they wished to sell included approximately 470 acres of winter wheat and summer fallowed cropland, 700 acres of intermediate wheat grass and 360 acres of diked alfalfa with a total of 400 acres of developed dikes. In his deposition Mr. Hall stated that these figures were based on crop yield and information he received from his seller when he purchased the land in 1956.

Based on these representations, Eastern printed and distributed a brochure that detailed the crop acreage. Mr. Hall told both Mr. Mobley, plaintiff, and Eastern that the figures were approximate but the brochure did not indicate that they were.

Mr. Mobley contacted Eastern and was advised by defendant Al Muri, Eastern's agent, that the Hall property was for sale. Hall received a brochure and requested official maps of the property. He did not receive complete maps of the property at the time of the sale because no such maps existed. Halls left partial maps of the alfalfa crop only, in the residence sold to the Mobleys. These maps showed that Mr. Hall had miscalculated the alfalfa crop and had overstated the crop acreage by at least 115.6 acres. Mr. Hall testified that these maps were delivered to Mr. Mobley before the sale.

On March 29, 1976, the Mobleys signed a contract for deed for the purchase of the ranch lands. The contract provided that there were

2

"4,179.19 acres, more or less," but did not expressly set forth the exact acreage for each type of land.

Mr. Mobley began planting grain in April of 1976. At this time his drill acreage measurement device did not correspond with the acreage shown on Eastern's brochure but Mr. Hall assured him that the acreage specified was correct. In the fall of 1976, Mr. Mobley summer fallowed, this time he used a borrowed drill. Again the drill measurement did not correspond with the acreage listed on the brochure.

In June of 1977, Mr. Mobley asked the Agriculture Soil Conservation Service (ASC) to take acreage measurements. On June 28, 1977, the ACS responded:

> "Enclosed find a copy of the fields you drew in
> yesterday. We only came up with 336.8 acres of
> wheat--164.5 acres of barley plus 405.4 acres of
> summer fallow. Do you think something is wrong?
> It is short of your estimate.
>
>                    Dot Nalley"

On August 29, 1977, Mr. Mobley paid the ASC $46.81 for acreage measurements. He received a measurement service record detailing the costs. The record indicated that there were 438.9 acres of wheat, 188.3 acres of barley and 393.0 acres of summer fallow. With another check dated November 29, 1977, Mrs. Mobley paid the ASC $15.00 for additional field measuring.

The ASC aerial survey was completed November 1, 1977. This survey showed that there were 386.1 acres of winter wheat and summer fallowed cropland not 470; 434.4 acres of intermediate wheat grass not 700 acres; 244 acres of diked alfalfa not 360 and 364.9 acres of developed dikes not 400 acres as represented on Eastern's brochure.

After the survey was completed Mr. Mobley called Eastern and discussed the discrepancy with Ed Kimball. Kimball told Mr. Mobley to wait until spring when the snow was off the ground, and that if there

3

were any shortages they could be determined at that time and that Hall would "make it right."

In the spring of 1978, Kimball and Hall did go to the Mobley ranch. They looked at the ASC maps and inspected the property. In May of 1978, Kimball and Hall met with Mr. Mobley and refused to make any adjustments in the purchase price because they felt the land was sold in gross as a cattle ranch.

On October 18, 1979, the Mobleys filed a complaint in the District Court seeking $100,000 in actual damages and $150,000 in punitive damages for fraud based on the overstatement of cropland. On July 17, 1981, the Mobleys submitted to the District Court a motion for partial summary judgment on the issue of liability against the Halls. On March 31, 1982, the defendants moved for summary judgment claiming that the Mobleys' action was barred by the two year statute of limitations for actions based on fraud.

Section 27-2-203, MCA, provides:

"Actions for relief on ground of fraud or mistake.
The period prescribed for the commencement of an action for relief on the ground of fraud or mistake is within 2 years, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake."

Mobleys contend that they fall within the discovery exception and that the alleged fraud was not discovered by them until the survey was completed on November 1, 1977, within two years of the filing of the action.

The defendants' motion was argued orally and the District Court entered its memorandum and order granting defendants' motion on May 24, 1982. The summary judgment was entered on May 26, 1982. The clerk of court served notice of entry of judgment on May 26, 1982. The Mobleys served their motion for new trial and affidavit in support of motion for new trial on June 9, 1982. The Mobleys did not notice their motion for new trial at the time it was served but secured an order from another

4

District Court judge continuing the hearing. Mobleys' counsel filed notice of appeal on June 24, 1982.

In its memorandum and order, the District Court outlined the circumstances pertaining to the Halls' suspicion, knowledge or discovery of acreage shortages.

1. Plaintiffs (Mobleys) discovered an acreage shortage when they drilled the fields in the spring of 1976.

2. Plaintiffs discovered or suspected shortage of intermediate wheat grass in 1976.

3. Plaintiffs discussed with Hall in 1976 his concern about an acreage shortage in three fields comprising more than one-half of the acreage of cropland.

4. Plaintiffs found ASC maps in the ranch house shortly after taking possession in 1976 showing acreage of cropland.

5. In the spring of 1977, plaintiff requested an acreage measurement which was furnished and paid for by the ASC on or before August 29, 1977, showing an acreage shortage. Plaintiff then requested measurement of intermediate wheat grass which was furnished on November 1, 1977.

In response, Mobleys assert that circumstances numbers 1 and 2 cannot be called discovery, within the meaning of the statute, because for at least one of the measurements, Mobley used a borrowed drill acre device and that Mr. Hall reassured Mr. Mobley that Hall's drill device had shown the fields as represented. Mobleys state that circumstance number 3 is not supported by the record and is not determinative of whether discovery had been made; that it was Mr. Mobley who contacted Mr. Hall and not the "plaintiffs;" that Mr. Hall reassured Mr. Mobley and allayed his fears and that the acreage shortage is nowhere near one-half but is 5 percent of the acres purchased or 18 percent of the improved acreage. With regard to circumstance no. 4, Mobleys assert that the ASC maps were outdated, incomplete and unreliable rendering them virtually

5

useless in calculating the acreage of tillable cropland. Furthermore, with regard to circumstance no. 5, Mobleys argue that in order for them to determine where there was an acreage shortage, justifying an action against the defendants, it was necessary to have all of the crop acreage measured.

Finally, the court's order did not include Delores Mobley or Mobley, Inc. and is therefore invalid.

Mobleys raise only one issue for review, whether they discovered facts sufficient to constitute knowledge of fraud more than two years prior to the filing of the complaint.

Mobleys contend that discovery occurred November 1, 1977, when the ASC aerial survey was completed. The defendants contend that discovery occurred sometime before October 18, 1977, two years prior to the filing of the complaint.

> This Court has held that:

> "It is not enough for the plaintiff merely to say
> that he was ignorant of the facts at the time of
> their occurrence, and has not come into knowledge
> of them until within two years. 'He must show
> that the acts of fraud were committed under such
> circumstances that he would not be presumed to
> have knowledge of them, it being the rule that
> if he has "notice or information of circumstances
> which would put him on inquiry which if followed
> would lead to knowledge, or that the facts were
> presumptively within his knowledge, he will be
> deemed to have had actual knowledge of the facts."'
> Davis v. Hibernia S. & L. Society, 21 Cal. App.
> 444, 132 Pac. 462; Lady Washington C. Co. v. Wood,
> 113 Cal. 482, 45 Pac. 809; Truett v. Onderdonk,
> 120 Cal. 581, 53 Pac. 26.)" Kerrigan v. O'Meara
> (1924), 71 Mont. 1, 8, 227 P. 819, 822; Lasby v.
> Burgess (1930), 88 Mont. 49, 65-66, 289 P. 1028,
> 1033.

On June 28, 1977, Mobley received a letter from the ASC office stating that the acreage was not as he had thought. On August 29, 1977, Mobley received the requested acre measurement showing a discrepancy. Mobleys do not deny the knowledge of such information but assert that they did not have knowledge of such a nature as to foreclose them from pursuing this matter by suit filed October 18, 1979.

6

While Mr. Mobley was diligent in his efforts to ascertain the exact acreage, he had sufficient notice of information of circumstances that put him on inquiry and therefore had actual knowledge of the facts.

While mere suspicion may not constitute discovery there is ample evidence in the record to support the District Court's determination of discovery within the meaning of the statute.

> "The law does not contemplate such discovery as would give positive knowledge of the fraud, but such discovery as would lead a prudent man to inquiry or action. To hold that discovery must amount to absolute knowledge of the fact of fraud would be to render the statute practically inoperative, since such knowledge is rarely had before the facts are established by adjudication." 37 Am.Jur. Fraud & Deceit § 410, at 556.

In Montana:

> "'Discovery' and 'knowledge' are not convertible terms, and whether there has been a discovery of the facts constituting the fraud within the meaning of the statute is a question of law to be determined from the facts proved." Kerrigan, 71 Mont. 1, 8, 227 P. 819, 822; Ray v. Divers (1928), 81 Mont. 552, 558, 264 P. 673; Lasby, 88 Mont. 49, 65, 289 P. 1028.

Therefore where the facts established point to discovery as defined under the statute, summary judgment is appropriate.

The case is remanded and the District Court is ordered to dismiss the cause on the ground of fraud. The parties should not be precluded from amending the complaint to include a cause of action for breach of contract. Liability and the facts of the case are not deemed proved by this opinion. The only issue decided herein is whether the Mobleys are precluded from proceeding on the theory of fraud based on the expiration of the statute of limitations.

_____
Justice

We Concur:

7

_____
Frank I. Haswell
                 Chief Justice

_____
Gen B Daly

_____

_____
                 Justices

8

Mr. Justice Frank B. Morrison, Jr., dissenting:

I respectfully dissent.

The complaint in this action was filed October 18, 1979. For plaintiff to be barred by the statute of limitations, discovery would have had to occur more than two years prior to the date of filing.

The ASC aerial survey was completed November 1, 1977. This survey indicated an acreage shortage. After completion of the survey Mobley called to discuss the discrepancy with Ed Kimball who asked Mobley to wait until spring when the snow was off the ground. Kimball stated that if there were any shortages they could be determined at that time and that Hall would "make it right".

In my opinion there is a jury question with reference to both date of discovery of the fraud and the question of whether Kimball's statement to Mobley created an estoppel. If plaintiff was induced to refrain from filing based upon an assurance that any shortages would be taken care of, then defendant could well be estopped from asserting the statute of limitations as a bar.

I would reverse the order of the District Court granting summary judgment and remand for trial.

_____
Justice

9