No. 88-287

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

RALPH M. HOLMAN,

            Plaintiff and Appellant,

      -vs-

GEORGE G. HANSEN, MARGARET E. HANSEN,
RITA M. TURLEY, GEORGIA L. HANSEN, CHRIS
M. HANSEN, VIC G. HANSEN and MICHAEL J. HANSEN,

            Defendants, Respondents and Cross-
            Appellants.

APPEAL FROM:   District Court of the Sixth Judicial District,
               In and for the County of Sweet Grass,
               The Honorable Byron L. Robb, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

            Richard F. Cebull; Anderson, Brown, Gerbase, Cebull,
            Fulton, Harman & Ross, Billings, Montana

      For Respondent:

            John T. Jones; Moulton, Bellingham, Longo & Mather,
            Billings, Montana

Submitted on Briefs:   April 6, 1989

Decided:   April 27, 1989

Filed:

_____
                    Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

This appeal involves a contract for deed to ranch property located near Big Timber, Montana. Plaintiff Ralph M. Holman (Holman), the buyer under the contract, appeals from the order of the District Court of the Sixth Judicial District, Sweet Grass County, granting summary judgment in favor of the sellers, George G. Hansen, et al. (Hansens). The order held Holman's claims to be barred, and granted one of the two alternative remedies sought by Hansens. The court ordered that Holman would forfeit all payments made under the contract, and Hansens would retake possession of the premises, less a 40-acre tract described below. The court denied Hansens' request for payment in full of the balance of the contract price. We affirm.

Holman presents two issues on appeal:

1. Whether the District Court improperly usurped Holman's right to a jury trial by resolving questions of fact in its grant of summary judgment to Hansens?

2. Did the District Court err in granting Hansens' motion for summary judgment on the grounds that Holman's claim is barred by the applicable statute of limitations, waiver, estoppel and contract terms?

Hansens present one additional issue on cross-appeal:

Whether the trial court erred in ruling that Hansens could not elect the remedy of specific performance and obtain a judgment for the accelerated balance of the contract for deed, and that Hansens' sole remedy was repossession of the ranch property and retention of the payments made by Holman.

The contract for deed at issue is dated January 1, 1982. The subject of the contract is approximately 2,800 acres of deeded land and assignment of a leasehold interest in another

1,120 acres. The purchase price is $950,000.00, paid with a $200,000.00 down payment and 20 annual installments of $88,132.76. The contract also provides that upon payment of $500,000.00 in principal and interest, Holman receives title to a 40-acre parcel within the ranch where a house and other improvements are to be built for Holman.

After execution of the contract, Holman took possession of the property, which he still retains. After the 1986 installment was made, more than $500,000.00 in principal and interest had been paid on the contract, and Holman received the deed to the 40-acre parcel. Holman failed to pay the 1987 installment. Pursuant to contract terms, Hansens sent Holman a Notice of Default, which gave him 40 days to pay the 1987 installment in full. Holman did not make the payment. Hansens then elected under the contract to accelerate the entire balance due, and sent a Notice of Acceleration to Holman. The notice gave Holman 90 days to pay all outstanding principal and interest under the contract. Holman did not do this, and filed suit against Hansens on January 30, 1987.

Holman's complaint alleged fraud, breach of warranty, breach of the implied covenant of good faith and fair dealing, failure of consideration and breach of four separate contracts to make improvements on the property. Holman sought rescission, or in the alternative, reformation of the contract for deed, general and punitive damages for fraud, contract damages, costs and attorney's fees.

Holman's claims of fraud stem from his alleged intention to use the ranch property to pursue an outfitting business. While Holman's primary profession was the operation of an iron and steel business, he had been licensed as an outfitter in Montana since 1957. According to Holman, he was

3

contemplating the sale of his business in order to "retire" to the ranch to work full-time as an outfitter.

George Hansen was Holman's main contact with the sellers. It Was George Hansen who showed the ranch to Holman. According to the Complaint, George Hansen made misrepresentations to Holman by claiming that, among other things, an abundance of game and fish inhabited the property, only one small patch of noxious weeds was to be found on the entire ranch, 250 to 300 cow/calf pairs could be grazed on the land in season, and Hansen himself had paid $600,000.00 for the property approximately ten years earlier. According to Holman, these statements were false, Hansen knew they were false, and Holman relied on them in deciding to purchase the property.

In their answer, Hansens asserted a counter-claim alleging two counts: (1) Holman was in default on the contract for deed, which entitled Hansens to judgment for the entire balance of the purchase price, or in the alternative awarding forfeiture of all payments made and repossession of the property; and (2) the location of Holman's 40-acre parcel rendered much of the ranch unusable by inhibiting access to it, therefore Holman's warranty deed to the 40 acres should be declared void and quiet title granted to Hansens.

Hansens later moved for summary judgment. By its order of February 29, 1988, the District Court granted summary judgment, but permitted Holman to retain the 40-acre parcel together with an easement for access over existing roads. The court requested briefs detailing Hansens' claim to the balance of the purchase price as opposed to forfeiture and repossession as provided for in the contract. By its Order of April 6, 1988, the court denied Hansens' request for the contract balance and instead awarded forfeiture and repossession. This appeal followed.

4

## I. Holman's Appeal

Holman's arguments on appeal center on the District Court's holding that his fraud-based claims are barred by the applicable statute of limitations. The statute of limitations for fraud is found at § 27-2-203, MCA:

> The period prescribed for the commencement of an action for relief on the ground of fraud or mistake is within 2 years, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake.

According to Holman, he did not discover the facts constituting George Hansen's fraud until 1985, less than two years before the complaint was filed.

The party asserting fraud is put on inquiry notice of the other party's misdeeds, and must exercise ordinary diligence to discover the facts constituting the fraud. Yellowstone Conference of United Methodist Church v. D.A. Davidson (Mont. 1987), 741 P.2d 794, 44 St.Rep. 1528; Gregory v. City of Forsyth (1980), 187 Mont. 132, 609 P.2d 248. Mere ignorance of the facts will not suffice to toll the statute of limitations.

> "He must show that the acts of fraud were committed under such circumstances that he would not be presumed to have knowledge of them, it being the rule that if he has 'notice or information of circumstances which would put him on inquiry which if followed would lead to knowledge, or that the facts were presumptively within his knowledge, he will be deemed to have actual knowledge of the facts.'"

Mobley v. Hall (1983), 202 Mont. 227, 232, 657 P.2d 604, 607 (quoting Kerrigan v. O'Meara (1924), 71 Mont. 1,8, 227 P. 819, 822). As stated in Holman's brief to this Court, "The gravamen of Mr. Holman's complaint is that Hansen engaged in

a continuing fraudulent concealment of facts that disallowed Mr. Holman from truly ascertaining the extent of the fraud."

Holman thus relies on the doctrine of fraudulent concealment to toll the statute until 1985. Holman cites our definition of fraudulent concealment from E.W. v. D.C.H. (Mont. 1988), 754 P.2d 817, 821, 45 St.Rep. 778, 783:

> "Fraudulent concealment has been described as the employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquisition of information disclosing a right of action."

(quoting Monroe v. Harper (1974), 164 Mont. 23, 28, 518 P.2d 788, 790). We have previously held that in the context of non-malpractice negligence actions, invoking fraudulent concealment requires a showing of affirmative conduct by the defendant calculated to obscure the existence of the cause of action. Yellowstone, 741 P.2d at 798. Given our previous discussions of fraud, this rule applies with equal force to the case at hand.

Holman first contends that the District Court "usurped" his right to a jury trial by resolving questions of fact in order to grant summary judgment. According to Holman, numerous issues of material fact existed as to when he knew, or should have known, that Hansen defrauded him. He cites § 28-2-404, MCA; and Jenkins v. Hillard (1982), 199 Mont. 1, 647 P.2d 354, for the proposition that actual fraud is always a question of fact. While this is a correct statement of the law which would apply to the merits of this case, it sidesteps the threshold barrier of the statute of limitations.

Under § 27-2-203, MCA, whether there has been a "discovery" of facts sufficient to start the running of the statute of limitations is a question of law. Mobley, 657

6

P.2d at 607. Holman's fraud claims were held to be barred under the statute of limitations because he discovered, or should have discovered by the use of his senses, the facts constituting the alleged fraud more than two years prior to the filing of this suit. This was a question of law. The court did not "usurp" Holman's right to a jury trial.

Holman's second argument asserts that Hansens are estopped from raising the statute of limitations as a defense because of George Hansen's acts of fraudulent concealment. He relies on Keneco v. Cantrell (1977), 174 Mont. 130, 568 P.2d 1225, which he asserts is factually similar to this case. In Keneco, the plaintiff and the defendant were president and vice president, respectively, of a small corporation. The two men held all of the corporation's stock. The plaintiff had been responsible for labor management and day-to-day operations, while the defendant had been responsible for bookkeeping and "business phases" of the corporation.

A disagreement arose as to the distribution of several issuances of corporate stock. The plaintiff confronted the defendant with his belief that he was not receiving his fair share of the stock. The defendant replied by assuring the plaintiff that it was a bookkeeping matter, the defendant knew what he was doing and things would be straightened out; i.e., the defendant would "make things right." We concluded that the defendant's assurances had lulled the plaintiff into a false sense of security, which had led to his failure to initiate suit before the statute of limitations had run. We held that the plaintiff had established the necessary elements of estoppel to prevent the defendant from raising the statute of limitations as a defense. The plaintiff relied on the defendant's assurances (and presumably his superior bookkeeping knowledge) to his detriment.

7

Holman argues that he was likewise assured by George Hansen that the problems he complained of would be made right. Holman argues that Hansen concealed defects in the premises through these assurances, and lulled Holman into an equally false sense of security. However, necessary elements of estoppel we found present in Keneco are not present in this case.

In Keneco, we held that there had been conduct amounting to representation or concealment of material facts, and that the truth concerning these facts was unknown to the party claiming the benefit of the estoppel. In this case, Holman either knew or should have known the truth about the defects at issue here. In fact, the alleged assurances made by Hansen came in response to Holman's complaints about the defects. Holman's deposition testimony shows that by 1984, he had uncovered "a whole barrelful of problems just about any place you looked." He had sufficient information about any alleged misrepresentations made by George Hansen during their negotiations to have stated to Hansen in 1984 that the ranch did not have "10 percent of the assets you claimed it had."

Holman testified, and his counsel now argues, that George Hansen's fraud was not "fully ascertainable" until the spring of 1985. While this argument places Holman's fraud claims neatly within the statute of limitations, it does not mesh with the law set out above. Holman admitted that the alleged misrepresentations were "in part ascertainable" prior to 1985. His deposition indicates that some were apparent as early as 1983.

Holman has been licensed in Montana as an outfitter since 1957, and has owned other property in the Big Timber area for a number of years. His testimony shows his skill and experience in matters such as discerning the presence of

game, the growth of noxious weeds and the average price of local real estate. Under the rules from the Yellowstone and Mobley cases, Holman was on inquiry notice, and was required to exercise ordinary diligence to discover the facts constituting the fraud alleged here. Holman noticed problems before 1985 and did in fact investigate them. He is therefore "deemed to have actual knowledge of the facts" under Mobley, and is unable to establish the elements of estoppel. Furthermore, Holman has failed to establish fraudulent concealment. There has not been a showing of conduct by George Hansen "calculated to obscure the existence of the cause of action" as required under Yellowstone. The defects being complained of were apparent to Holman. George Hansen may have attempted to placate Holman with assurances that all would be made right, but he did not obscure Holman's cause of action. Holman's fraud-based claims are barred by the statute of limitations.

Lastly, Holman argues that the District Court was in error when it determined that his claims of misrepresentation were barred by the independent investigation clause found in the contract. We need not address this argument, having held that these claims are barred by the statute of limitations.

We affirm the decision of the District Court on Holman's appeal.

## II. Hansens' Cross-Appeal

The District Court relied mainly on the terms of the contract for deed in deciding Hansens' counterclaim. Hansens were unable to convince the court that their alleged entitlement to the balance of the contract price overcame the contract's forfeiture clause, which reads in relevant part:

> IT IS FURTHER MUTUALLY UNDERSTOOD AND AGREED by and between the parties hereto that said forty (40) days and ninety (90) days is a reasonable and

9

sufficient notice to be given to the said Party of the Second Part in case of his failure to perform any of the covenants on his part hereby made and entered into, and shall be sufficient to cancel all obligations hereunder on the part of the said Parties of the First Part and fully reinvest them with all right, title and interest hereby agreed to be conveyed, and in case of such cancellation, the Party of the Second Part shall forfeit all payments made by him on this contract, and all his right, title and interest in all buildings or other improvements whatsoever, and such payments shall be retained by the said Parties of the First Part in full satisfaction and in liquidation of all damages by them sustained . . . (Emphasis added.)

Hansens' claim for the contract balance rested on this Court's decision in Glacier Campground v. Wild Rivers, Inc. (1978), 184 Mont. 543, 597 P.2d 689. In Glacier, we held that a seller under a contract for deed could pursue a remedy other than forfeiture and repossession as long as the contract did not preclude the remedy sought or provide that forfeiture and repossession was the exclusive remedy for breach.

On cross-appeal, Hansens again assert their entitlement to seek specific performance (payment of the balance of the contract price) under the rule in Glacier. In response, Holman raises two arguments, one based on parol evidence and one based on the doctrine of election of remedies. We need not address the election of remedies issue, because parol evidence admissible on this claim establishes the intent of the parties to this contract that specific performance would not be available to the Hansens.

In Glacier, we allowed the seller to seek a remedy outside the contract in part because the forfeiture clause in that case was "on its face, ambiguous and uncertain" requiring recourse to rules of construction and extrinsic evidence to give it meaning. Glacier, 597 P.2d at 692.

Hansens point out that the forfeiture clause in this case is very similar to that construed in Glacier, which by analogy should allow them to go outside the contract and seek specific performance.

We noted in Glacier that a primary rule of contract construction is to give effect to the mutual intent of the parties. Glacier, 597 P.2d at 692; see § 28-3-301, MCA. Hansens placed the imperfections in the forfeiture clause in issue by seeking an alternative remedy based on Glacier. We are therefore able to look to extrinsic evidence in order to discover the mutual intent of Holman and the Hansens. Section 28-2-905, MCA.

Holman placed two affidavits before the District Court, his own and that of the attorney representing him when the contract was negotiated, pointing out that George Hansen had requested a clause giving Hansens the right to seek specific performance. According to the affidavits, Holman rejected such a provision, and none was included in the contract. As the District Court stated in the explanatory comment to its order of April 6, 1988, these affidavits were not contradicted by Hansens. It is thus apparent that the mutual intent of these parties was that specific performance would not be a possible remedy under this contract. Hansens were precluded from pursuing that remedy.

We affirm the decision of the District Court.

_____
Justice

We Concur:

_____
Chief Justice

_____

11

_____
L. C. Gulbrandson

_____
William E. Hunt

_____
Justices

Mr. Justice John C. Sheehy did not participate.