42 F.3d 1401
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Christine RODKEY, Plaintiff-Appellant,
v.
CAPITOL AMERICAN LIFE INSURANCE CO., Defendant-Appellee.
 No. 93-35830.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 7, 1994.
Decided Dec. 7, 1994.
 
 Before: WOOD, Jr.,* HUG, and TANG, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 On September 13, 1991, Capitol American Life Insurance Company ("Capitol") refused to pay certain claims submitted to it by Christine Rodkey, whose husband, Bob Rodkey, had just died of cancer. These particular claims arose when Bob Rodkey was hospitalized on three occasions for complications resulting from chemotherapy treatments. Capitol denied benefits due to a clause in the Rodkeys' policy which specifically excludes coverage for losses resulting from illnesses caused by cancer treatment. As a result of this denial, Christine Rodkey filed suit against Capitol, alleging that it had negligently and fraudulently misrepresented the coverage of the Rodkeys' policy and that it had wrongfully denied insurance benefits. Christine Rodkey later moved to amend her complaint to include causes of action for fraud and for deliberate destruction of evidence. The district court denied Rodkey's motion and instead granted Capitol's motion for summary judgment. Rodkey appeals.
 
 FACTS
 
 3
 On June 23, 1987, Bob and Christine Rodkey purchased a cancer insurance policy from Capitol. Christine Rodkey alleges that Capitol's agent told them at the time that the policy provided limitless cancer coverage. Shortly after purchasing the policy, the Rodkeys attempted to retroactively cancel the policy, but Capitol denied their request as the time period for a "free look" had passed. Capitol informed the Rodkeys that the policy would remain in force until July 1, 1988, the due date for the next yearly premium. Christine Rodkey claims that they sought cancellation because the premium was too high. Capitol, on the other hand, claims that Bob Rodkey sought cancellation because he became dissatisfied with the policy's coverage after having read it.
 
 
 4
 In early to mid-June of 1988, Bob Rodkey was diagnosed with cancer. On June 20, 1988, the Rodkeys made a partial payment of the second annual premium, thereby keeping the policy in force. The Rodkeys were fairly satisfied with the coverage they received under the policy from 1988 until Bob Rodkey's death on May 26, 1991. Capitol made payments in excess of $40,000 directly to the Rodkeys.
 
 
 5
 Christine Rodkey later filed suit on June 16, 1992, however, after Capitol denied claims for three hospital visits made by Bob Rodkey shortly before, and up to his death. Capitol alleges that Mr. Rodkey was treated only for complications resulting from his cancer treatment during these three hospitalizations. Capitol further alleges that Part 3A of the Rodkeys' policy serves to exclude coverage for any illness caused by cancer treatment, thus it was not obligated under the policy to pay for these hospitalizations.
 
 
 6
 Rodkey's suit charged Capitol with negligently and fraudulently misrepresenting the contractual provisions of the policy and with wrongfully denying cancer insurance benefits. After the district court dismissed Rodkey's negligent and fraudulent misrepresentation claim on March 4, 1993, she moved to amend her complaint per Rule 15(a) of the Federal Rules of Civil Procedure to include causes of action for fraud and for deliberate destruction of evidence. On June 3, 1993, Capitol moved for summary judgment. The district court, on August 9, 1993, denied Rodkey's motion to amend her complaint and granted Capitol's motion for summary judgment. Rodkey appeals.
 
 ANALYSIS
 I.
 
 7
 We review for an abuse of discretion the district court's denial of Rodkey's motion to amend her complaint as a responsive pleading had already been filed. California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1472 (9th Cir.1987).
 
 
 8
 We review the district court's grant of summary judgment by considering all factual issues in the light most favorable to the nonmoving party (herein Rodkey) and determining de novo whether, per Rule 56(c) of the Federal Rules of Civil Procedure, there exists any genuine issue of material fact requiring submission of the case to the finder of fact or whether a judgment as a matter of law was appropriate. Lone Ranger Television, Inc. v. Program Radio Corp., 740 F.2d 718, 720 (9th Cir.1984); Twentieth Century-Fox Film Corp. v. MCA, Inc., 715 F.2d 1327, 1328 (9th Cir.1983).
 
 
 9
 The district court's conclusions of law are also reviewed de novo as is the district court's analysis of a contract where it applies the principles of contract interpretation to the contract's language. Gregory K. v. Longview School Dist., 811 F.2d 1307, 1310 (9th Cir.1987); Miller v. Safeco Title Ins. Co., 758 F.2d 364, 367 (9th Cir.1985).
 
 
 10
 This matter was before the district court under its diversity jurisdiction, thus the applicable state's (herein Montana's) substantive law applies. Nevada Power Co. v. Monsanto Co., 955 F.2d 1304, 1306 (9th Cir.1992).
 
 II.
 
 11
 Despite the " 'extreme liberality' " with which leave to amend is granted within the Ninth Circuit, DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir.1987) (citations omitted), the district court denied Rodkey's motion to amend her pleadings to add a claim of fraud and a claim of deliberate destruction of evidence. The district court held that denial of Rodkey's motion was appropriate because the addition of these claims would be "futile."
 
 A.
 
 12
 The addition of Rodkey's fraud claim would be "futile," the district court held, because it was barred by the two year period set forth in the applicable statute of limitations, Sec. 27-2-203, MCA.[1] The fraud occurred, Rodkey alleges, on the day she and her husband purchased the policy--June 23, 1987--when Rodkey claims they were told by Capitol's agent that the policy "had guarantees, no limitations, covered everything." Appellant's ER at tab 19, p. 30 (Deposition of Christine Rodkey). Christine Rodkey did not file her suit against Capitol until June 16, 1992.
 
 
 13
 Under Sec. 27-2-203, MCA, the two year limitations period starts running upon "the discovery by the aggrieved party of the facts constituting the fraud or mistake." The Montana courts apply a fairly liberal and objective test to the question of accrual under Sec. 27-2-203:
 
 
 14
 Mere ignorance of the facts will not suffice to toll the statute of limitations.... "[I]f [the party asserting fraud] has 'notice or information of circumstances that would put him on inquiry which if followed would lead to knowledge, or [if] the facts were presumptively within his knowledge, he will be deemed to have actual knowledge of the facts.' "
 
 
 15
 Holman v. Hansen, 237 Mont. 198, 202, 773 P.2d 1200, 1203 (1989) (quoting Mobley v. Hall, 202 Mont. 227, 232, 657 P.2d 604, 607 (1983) (quoting Kerrigan v. O'Meara, 71 Mont. 1, 8, 227 P. 819, 822 (1924))). Rodkey claims that she was not aware of the falsity of Capitol's agent's statements until September 13, 1991, when she received a letter from Capitol denying benefits for the three hospitalizations in question.
 
 
 16
 The establishment of the time when a party was, or should have been on notice is generally a job for the finder of fact, Williams v. DeVinney, 259 Mont. 354, 363, 856 P.2d 546, 552 (1993); General Bedding Corp. v. Echevarria, 947 F.2d 1395, 1397 n. 2 (9th Cir.1991), and " 'may be decided as a matter of law only when uncontroverted evidence irrefutably demonstrates plaintiff discovered or should have discovered the fraudulent conduct.' " Nevada Power Co. v. Monsanto Co., 955 F.2d 1304, 1307 (9th Cir.1992) (quoting Mosesian v. Peat, Marwick, Mitchell & Co., 727 F.2d 873, 877 (9th Cir.), cert. denied, 469 U.S. 932 (1984) (citations omitted)). Applying this test here, it appears that there is ample, uncontroverted evidence demonstrating that the Rodkeys should have discovered the alleged fraud before June of 1990.
 
 
 17
 First, upon receipt of their policy, the Rodkeys did or should have noticed that their "no limitations" policy had the following language stamped across its face: "THIS IS A LIMITED POLICY. PLEASE READ CAREFULLY." And it appears that Bob Rodkey did read the policy carefully, for he later requested a refund of his premium, writing: "I have read the policy 0697049 you have mail [sic] me. I am not happy with the way it reads." Appellee's ER at tab 1. Christine Rodkey has not contested Capitol's allegation that Bob learned upon receipt of the policy that it was limited; when questioned at her deposition whether Bob Rodkey was dissatisfied with the coverage of the policy as actually written, she only stated: "You'd have to ask him." Appellant's ER at tab 19, p. 39 (Deposition of Christine Rodkey).
 
 
 18
 In addition, the policy itself lists limitations under the heading "Exceptions and Limitations," including the limitation behind the denial of benefits here in question:
 
 
 19
 This policy pays only for loss resulting from definitive cancer treatment, including only direct extension, metastatic spread (and/or its direct effects) or recurrence. Pathologic proof must be submitted to support such additional claims. This policy does not cover any other disease or sickness or incapacity, nor will benefits be paid for any illness related to or caused by cancer treatment.
 
 
 20
 (Emphasis added). Christine Rodkey does not claim that she or her husband failed to read the policy.[2]
 
 
 21
 Furthermore, the three claim denials at issue in this suit were not the only denials made by Capitol. Between November 1, 1988, and March 21, 1990, Capitol denied claims submitted by the Rodkeys on seven other occasions. Therefore the Rodkeys were, or should have been on notice that the policy was not unlimited--either the receipt of a copy of the limited policy in 1987 or any of the earlier denials was sufficient to put the Rodkeys under a duty to inquire. Since Christine Rodkey did not file suit until June 1992, the district court did not err when it found that it would be futile for Rodkey to amend her complaint as the fraud charge was barred by Sec. 27-2-203, MCA.
 
 B.
 
 22
 The addition of Rodkey's claim for the deliberate destruction of evidence would also be futile, the district court found, because it would be easily defeated upon a motion for summary judgment. The destruction of evidence occurred during discovery, Rodkey alleges, when an employee of Capitol's threw out a copy of a 1990 videotape used for the training of salespersons.
 
 
 23
 Rodkey sought the tape in an effort to prove that Capitol deliberately trained its agents to mislead potential clients. However, the agent who sold the Rodkeys their policy, Steve Sutton, had not seen the 1990 training film--he had been trained with a 1987 version of the film. Capitol has supplied a copy of the 1987 film to Rodkey. Furthermore, Capitol still has other copies of the 1990 tape in its possession; it had objected to the production of the 1990 tape because it was not in existence when Steve Sutton was trained nor when he sold the Rodkeys their policy. Rodkey apparently failed to renew her request for a copy of the 1990 videotape after Capitol indicated that it had other copies in its possession.
 
 
 24
 Capitol argues that no spoilation of evidence claim is allowed under Montana law, but even if such a claim does exist, and even if the 1990 tape was relevant to Rodkey's fraud claim, it would still be futile for Rodkey to amend her complaint. For Rodkey's destruction of evidence claim to be viable, Capitol must have destroyed evidence that was relevant to proving a theory of Rodkey's case.[3] The videotape would only be relevant, if at all, to prove Rodkey's fraud claim. As discussed above, the district court acted correctly when it refused to allow Rodkey to amend her complaint to add a claim for fraud. Since Rodkey has no viable fraud claim, she also has no viable claim relating to the destruction of evidence regarding that fraud claim.
 
 III.
 
 25
 Rodkey's breach of contract claim arises from Capitol's denial of benefits for the three hospitalizations in question. Capitol denied the benefits under Part 3A of the policy which limits coverage to "loss resulting from definitive cancer treatment" and expressly excludes coverage for the treatment of "any illness related to or caused by cancer treatment." Thus, the characterization of Bob Rodkey's treatment during these three hospitalizations is crucial to Rodkey's claim.
 
 
 26
 Rodkey's appeal hinges upon the claimed ambiguity of the term "definitive cancer treatment." While it is true that the policy does not define this term, the district court was able to skirt this question by finding that no genuine issue of material fact existed regarding whether Bob Rodkey's three hospitalizations were caused by "illness related to or caused by cancer treatment." Specifically, the district court found that the testimony of Dr. Henderson, Bob Rodkey's physician, failed to raise any material factual questions sufficient to defeat summary judgment after Capitol had met its initial burden of producing facts, through Bob Rodkey's medical records and the affidavits of Drs. Drill and Adams, that demonstrated that the treatments did fall within Part 3A's exclusionary language.
 
 
 27
 In brief, Bob Rodkey's medical records lack any indication that he was given treatment to combat his cancer during these hospitalizations. Instead, he was apparently treated only for complications that arose from his earlier chemotherapy sessions. Dr. Henderson's blanket assertion that "[t]here is no question that Mr. Rodkey's admissions throughout his course were for definitive cancer treatment," raises only the fact of Dr. Henderson's holistic view of medicine. Appellant's ER at tab 5, p. 2 (Affidavit of Dr. Henderson).
 
 
 28
 Dr. Henderson states that "[i]t is absolutely impossible to separate treatment from effects of that treatment. It is further physiologically, pharmacologically and logically absurd to somehow separate the patient's disease from the rest of the patient." Id. Dr. Henderson might be correct, but only as a matter of pure medical causation. The last clause of Part 3A separates the treatment of "illness related to or caused by cancer treatment" from the treatment of the cancer itself. There is nothing dramatically inconsistent about such a distinction. That Dr. Henderson may tend, in his mind, to group the effects of cancer together with the inevitable effects of cancer treatment is irrelevant as a matter of contractual interpretation.
 
 
 29
 In fact, Dr. Henderson only confirmed that these three hospitalizations do fall within Part 3A's exclusions when he stated that the "toxicity of [the drugs administered to Bob Rodkey] may be enhanced by liver disease because of metabolic effects of the liver disease on the clearance and metabolism of the drugs.... Mr. Rodkey's cancer of the liver interacted with drugs to produce enhanced effects and side effects." Id. The coverage provided by the policy, as limited by Part 3A is clear: The administration of the drugs listed by Dr. Henderson to actually combat cancer is covered, but treatment for those drugs' side effects, even their inevitable side effects, is not covered. Dr. Henderson did not dispute that Bob Rodkey was treated for illnesses caused by chemotherapy during these hospitalizations and he failed to identify any direct cancer treatment that Bob Rodkey received. Therefore, even when Dr. Henderson's testimony is viewed in the light most favorable to Rodkey, it reveals only Dr. Henderson's personal dissatisfaction with the coverage provided by the policy, and nothing more.
 
 
 30
 Since these three hospitalizations dealt only with illnesses caused by Bob Rodkey's cancer treatment, they are clearly excluded from the policy's coverage by Part 3A. Rodkey's claim that the inclusive term "definitive cancer treatment" is ambiguous is therefore rendered moot and need not be addressed.
 
 IV.
 
 31
 The district court also granted summary judgment for Capitol on Rodkey's claim that Capitol violated subsections (1), (4) and (6) of the Montana Unfair Trade Practices Act ("Act"), Sec. 33-18-201, MCA. Rodkey alleges that Capitol violated the Act by misrepresenting the policy's provisions, refusing to pay Rodkey's claims without conducting a reasonable investigation, and neglecting to attempt in good faith to settle Rodkey's claims. Rodkey brought this claim under Sec. 33-18-242, MCA, which creates an independent cause of action by an insured against an insurer for violations of the subsections of the Act at issue here.
 
 
 32
 Section 33-18-242, MCA, further provides that "[a]n insurer may not be held liable under this section if the insurer had a reasonable basis in law or in fact for contesting the claim or the amount of the claim, whichever is in issue." Sec. 33-18-242(5), MCA. The district court granted summary judgment on the basis of this subsection in light of Part 3A of the policy and its exclusion of benefits for the treatment of "any illness related to or caused by cancer treatment." As discussed above, Bob Rodkey's medical records from the three hospitalizations in question indicate that he was treated only for complications arising from chemotherapy during these occasions.
 
 A.
 
 33
 Rodkey's claim that Capitol misrepresented the policy's provisions in violation of Sec. 33-18-201(1), MCA, hinges upon four written communications made by Capitol--one to Christine Rodkey and three to state governmental bodies. Rodkey's misrepresentation claim is founded entirely upon the alleged ambiguity of the term "definitive cancer treatment." It is true that the policy does not define this term and that most of these letters do mention that benefits were denied because no losses resulting from definitive cancer treatment were involved.
 
 
 34
 However, the letters also make it generally clear that benefits were denied because of the policy's specific exclusion of coverage for illnesses caused by cancer treatment. Based on this fact and the discussion above regarding Rodkey's breach of contract claim, no material issue of fact is raised by Rodkey's allegation that the term "definitive cancer treatment" is ambiguous.
 
 B.
 
 35
 Summary judgment was also proper regarding Rodkey's allegation that Capitol violated subsection (4) of Sec. 33-18-201 which prohibits insurers from "refus[ing] to pay claims without conducting a reasonable investigation based upon all available information." This claim also hinges upon the alleged ambiguity of the term "definitive cancer treatment"--together with the fact that Capitol's claims examiners, who lack medical degrees, based their review solely upon Bob Rodkey's medical records.
 
 
 36
 While it is true that the reasonableness of an insurer's investigation is generally considered a question of fact in Montana, Dees v. American Nat'l Fire Ins. Co., 260 Mont. 431, 442, 861 P.2d 141, 147 (1993), Rodkey has not produced any documents not possessed by Capitol during its investigation nor has she introduced expert testimony indicating that Capitol had a duty of further inquiry. Rodkey does fault Capitol for not contacting Bob Rodkey's physician, Dr. Henderson, before denying benefits. But as discussed above, Dr. Henderson's testimony reveals only his own subjective dissatisfaction with the policy's coverage without divulging any additional facts that would have materially aided Capitol in its investigation.
 
 C.
 
 37
 The district court also acted correctly when it granted summary judgment as to Rodkey's third and last alleged violation of the Act which involves subsection (6). Subsection (6) prohibits insurers from "'neglect[ing] to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear." Capitol argues that Rodkey has failed to preserve this claim for review, but regardless of this point it is clear that Capitol's liability to Rodkey for these hospitalizations was not "reasonably clear." The policy expressly excluded coverage for losses due to illness caused by cancer treatment and all of the medical records and testimony by doctors indicate that this is exactly what Bob Rodkey was treated for during these hospitalizations--complications arising from chemotherapy. Rodkey has not raised any additional material facts to the contrary.
 
 
 38
 Accordingly, the decision of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Harlington Wood, Jr., Senior Circuit Judge for the Seventh Circuit Court of Appeals, is sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Section 27-2-203 states:
 The period prescribed for the commencement of an action for relief on the ground of fraud or mistake is within 2 years, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake.
 
 
 [2]
 The Supreme Court of Montana has held that the possession of an allegedly fraudulent document will start the statute of limitations running for fraud claims involving that document. See, e.g., Richland Nat'l Bank & Trust v. Swenson, 249 Mont. 410, 418, 816 P.2d 1045, 1051 (1991) ("The record indicates that Mrs. Swenson and B & J had the security agreement in their possession in December of 1985, thus she had the means to discover the alleged fraud at that time.")
 
 
 [3]
 For a citation of the elements of a cause of action for the destruction of evidence, see Continental Ins. Co. v. Herman, 576 So.2d 313, 315 (Fla.Dist.Ct.App.1991)